IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03357-KAS

DUSTIN JONES,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant's **Motion to Dismiss** [#12] (the "Motion"). Plaintiff filed a Response [#21] and Defendant filed a Reply [#22]. The Court has reviewed the briefing, the entire case file, and the applicable law. For the following reasons, the Motion [#12] is **GRANTED IN PART** and **DENIED IN PART**.[1]

### I. Background

      This Federal Tort Claims Act (FTCA) action arises from a May 13, 2021 incident that occurred at Buckley Space Force Base ("Buckley"), located in Aurora, Colorado.[2] *Compl.* [#1], ¶ 13. Plaintiff Dustin Jones was lawfully on Buckley's premises but was "not in military service." *Id.*, ¶¶ 13, 15. At that time, the U.S. Air Force maintained and controlled vehicle security barriers at Buckley's Mississippi Gate entrance. *Id.*, ¶ 14.

_____

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#16]; *Order of Reference* [#17].

[2] Plaintiff erroneously alleges that Buckley is located in Colorado Springs, Colorado. *Compl.* [#1], ¶ 13.

Plaintiff alleges that, at around 3:04 p.m. on May 13, 2021, an Air Force agent improperly deployed a vehicle security barrier, striking his vehicle, causing it to catch fire, and injuring him. *Id.*, ¶¶ 19-21, 23. Plaintiff's vehicle was totaled. *Id.*, ¶ 22. Plaintiff had been "previously parked in plain sight within [Buckley] premises before the incident," but "Defendant's employees or agents lack[ed] awareness of the fact" and made the "hasty decision to initiate the alert and deploy the barrier, [which] was not grounded in reasonable judgment or proper assessment of the situation." *Id.* ¶ 38; *see also id*. ¶ 39. Plaintiff lodges two claims against Defendant, the United States of America: (1) premises liability under Colo. Rev. Stat. § 13-21-115 and (2) negligence. *Id.*, ¶¶ 1, 24-41.

Plaintiff attached a Letter [#1-1] to his Complaint [#1]. The Letter [#1-1] was written by Chief Bradford S. Hunt of the Air Force Claims and Tort Litigation Division and addressed to Plaintiff's counsel. *See Letter* [#1-1]. Mr. Hunt reaffirmed a prior denial of Plaintiff's FTCA claim because "[Plaintiff] was escorting his spouse onto base for the purpose of getting her a military dependent ID card, which confers benefits to her including access to military installation facilities such as the commissary, base exchange, the gym and other benefits and services." *Id.*

Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See Motion* [#12] at 1. The Court stayed discovery pending resolution of the Motion [#12]. *See Minute Order* [#18].

## II. Legal Standards

### A.    Rule 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th

1093, 1108 (10th Cir. 2023). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

A Rule 12(b)(1) challenge may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citation omitted). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)).

**B.      Rule 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility

refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations and quotation marks omitted).

Under Rule 12(b)(6), a complaint's sufficiency must usually rest on its allegations alone. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). A few limited exceptions to this rule exist, namely: (1) documents that a complaint incorporates by reference; (2) documents referenced in the complaint if they are central to the plaintiff's claims and the parties do not dispute their authenticity; and (3) matters of which the court may take judicial notice, such as the court's own files and matters of public record. *Id.* (citations omitted); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

### III. Analysis

Defendant raises three arguments in favor of dismissal. First, it argues that the *Feres* doctrine bars Plaintiff's claims because he was a reservist and was on base to obtain military benefits. *See Motion* [#12] at 5-7. Second, it argues that the discretionary function exception to the FTCA bars Plaintiff's claims in light of Air Force Policy Directive ("Directive") 31-1 and Space Force Operating Instruction ("Operating Instruction") 31-118.

*Id.* at 8-15. Finally, it argues that Plaintiff failed to state a claim for premises liability and that he has failed to state a separate negligence claim. *Id.* at 16-18.

### A. Conversion from Rule 12(b)(1) or Rule 12(b)(6) Motion into Rule 56 Motion

At the outset, the Court considers whether it must convert Defendant's Motion [#12] into one for summary judgment.

"[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). On that basis, courts regularly convert Rule 12(b)(1) motions that invoke the FTCA's discretionary function exception. *See, e.g.*, *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129-30 (10th Cir. 1999) (affirming dismissal of tort claims where lower court converted 12(b)(1) motion into a 12(b)(6) motion); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (noting requirement that district court convert 12(b)(1) motion into 12(b)(6) motion and, on appeal, treating motion as one under Rule 56 because matters outside the pleadings were considered). The Tenth Circuit has repeatedly (though not uniformly) suggested that the invocation of the *Feres* doctrine under Rule 12(b)(1) also requires conversion. *Cf. Pringle v. United States*, 208 F.3d 1220, 1222, 1223 (10th Cir. 2000) (reasoning that the dispositive motion should have been decided under Rule 56 where the government raised the *Feres* doctrine and FTCA's discretionary function exception and the court considered materials outside the pleadings and made factual findings); *Gonzalez v. U.S. Air Force*, 88 F. App'x 371, 373 (10th Cir. 2004) (stating that a *Feres* doctrine-based dismissal "is

not purely jurisdictional, but implicates merits issues as well" and is reviewed under summary judgment standards); *but cf. Ricks v. Nickels*, 295 F.3d 1124, 1127, 1133 (10th Cir. 2002) (affirming lower court's Rule 12(b)(1) dismissal under the *Feres* doctrine) (citation omitted); *Tootle v. Dunavan*, 107 F. App'x 825, 826 (10th Cir. 2004) (same).

Here, Plaintiff's status and the reason for his presence on Buckley's premises are relevant to both the *Feres* analysis and whether the discretionary function exception applies. These facts also potentially go to the merits of his premises liability claim. Given these two jurisdictional issues which intertwine with the merits, the Court converts the Motion [#12] to a Rule 12(b)(6) motion and limits its review to materials permissibly considered under that rule. *See, e.g.*, *Daugherty v. United States*, 212 F. Supp. 2d 1279, 1304 (N.D. Okla. 2002) (converting Rule 12(b)(1) motion into a Rule 12(b)(6) motion because the *Feres* arguments were a facial attack on the complaint and did not rely on any "extra-complaint evidentiary material").

Consequently, the Court cannot consider most attachments to the parties' briefing or the contested facts they raise in argument. *See, e.g.*, *Motion* [#12] at 7 (asking the Court to consider Plaintiff's prior statement), 13 (asking the Court to consider Staff Sergeant Timchak's witness statement); *Complainant Statement* [#12-1] at 6-7; *Staff Sgt. Timchak Statement* [#12-1] at 9-10; *Response* [#21] at 1-4 (statement of facts, including details not previously alleged and photographs not found in the Complaint [#1]); *Pl.'s Exhibits* [#21-1] (verification of civilian employment), [#21-2] (Plaintiff's affidavit with more details surrounding the incident). Instead, the Court accepts as true the non-conclusory facts alleged in the Complaint [#1] and only considers the Air Force Policy Directive 31-1 [#12-2] ("Directive 31-1") and the SFS Operating Instruction 31-118 ("Operating

Instruction 31-118"), *see* [#12-1] at 12-114, because they are agency rules and regulations of which the Court may take judicial notice and because Plaintiff does not challenge their authenticity.[3] *See, e.g.*, *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations."); *Mancell v. McHugh*, No. 13-417 KG/SMV, 2015 WL 13662785, at *2 (D.N.M. Apr. 3, 2015) (taking judicial notice of an Army regulation).

### B. *Feres* Doctrine

The *Feres* doctrine is a judicially created exception to the FTCA's waiver of sovereign immunity, barring claims against the United States "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). The doctrine "'encompass[es], at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military.'" *Pringle v. United States*, 208 F.3d 1220, 1223-24 (10th Cir. 2000) (quoting *Persons v. United States*, 925 F.2d 292, 296 n.7 (9th Cir. 1991)) (alteration and emphasis in original). In *Pringle*, the Tenth Circuit adopted the following Ninth Circuit four-factor test to determine whether an activity is "incident to military service" and is therefore barred by the *Feres* doctrine: "(1) the place where the negligent act occurred; (2) the duty status of the plaintiff when the negligent act occurred; (3) the benefits accruing to the plaintiff because of his status as a service member; and (4) the

---

[3] Plaintiff argues that these policies and procedures were not previously available to Plaintiff and were not previously mentioned to him, but he does not challenge their *authenticity* or assert that they were not in effect at the time of the incident. *See Response* [#21] at 14-15. Moreover, Defendant has authenticated Operating Instruction 31-118 through Mr. Palma's sworn declaration. *See Decl. of Palma* [#12-1] at 3, ¶ 6-7. Directive 31-1 is publicly available online. *See* https://static.e-publishing.af.mil/production/1/af_a4/publication/afpd31-1/afpd31-1.pdf (opens PDF containing Directive 31-1) (last visited October 25, 2024).

nature of the plaintiff's activities at the time the negligent act occurred." *Id.* (citing *Dreier v. United States*, 106 F.3d 844, 848 (9th Cir. 1997)).

Active-duty status is not necessary—the "incident to service" test also applies to reservists. *Cf. Quintana v. United States*, 997 F.2d 711, 712 (10th Cir. 1993) (holding that *Feres* doctrine barred reservist's medical malpractice claim arising from an injury incurred in "inactive duty training" because the plaintiff was "entitled" to surgery at the military base "precisely because of her military status" and military servicemembers performed the surgery in a military hospital). However, the mere fact that an injured person is or was a member of the military does not automatically mean that *Feres* applies. *See Newton v. Lee*, 677 F.3d 1017, 1026-30 (10th Cir. 2012) (finding that the *Feres* doctrine did not bar a retired National Guardsman's claim for withdrawal of his air traffic control specialist certificate because his position as air traffic controller was "a civilian position that did not require current or prior military service" and "he was a purely civilian employee of the military whose injuries were unrelated to his prior military service.").

The Court finds that discovery is needed to determine whether Plaintiff's "injuries are incident to . . . [his] . . . service *in* the military," as opposed to "incident to . . . [his] service *to* the military." *Newton*, 677 F.3d at 1029 (emphasis in original). Because the Court has converted Defendant's Motion [#12] into one brought solely under Rule 12(b)(6), the Court accepts as true the non-conclusory facts alleged in the Complaint [#1] and considers the Air Force Claims and Tort Litigation Division's Letter [#1-1] upholding the denial of Plaintiff's FTCA claim. The Complaint itself lacks any allegations as to the reasons for Plaintiff's presence at Buckley but states that Plaintiff was "not in military service" at the time. *See*, *e.g.*, *Compl.* [#1] ¶ 13 ("Plaintiff was lawfully on the subject

premises of the Buckley Air Force Base"), ¶ 15 ("Plaintiff was not in military service and was an 'invitee' on the premises of the Buckley Air Force Base"), ¶ 26 ("Plaintiff was a civilian 'invitee' of Defendant"). The Letter [#1-1] attached to the Complaint acknowledges that Plaintiff "was not on active duty at the time of the injury," but indicates that Plaintiff was "escorting his spouse onto base for the purpose of getting her a military dependent ID card, which confers benefits to her including access to military installation facilities[.]"

Based on the facts alleged in the Complaint and incorporated by reference to the Letter [#1-1], the Complaint's four corners and attachments address only two of the four *Pringle* factors: the location of the negligent act and Plaintiff's duty status at the time. The incident occurred on a military base and Plaintiff was not on active duty at the time. However, the Complaint and letter are unclear as to the benefit that accrued to *Plaintiff* because of his status as a (reservist) service member and the nature of Plaintiff's activities at the time of the incident, *i.e.*, whether Plaintiff's activities were related to his service member status. The Court is mindful that "[i]njuries cannot arise 'incident to service' if a plaintiff's claims are wholly unrelated to his current or former military service." *Newton*, 677 F.3d at 1029.

For reasons already discussed, the Court declines the parties' invitation to consider competing materials attached to the parties' briefs and to resolve these material factual disputes. The Court cannot accept this invitation under Rule 12(b)(6). *Cf. Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (stating that the Court's function under Rule 12(b)(6) is not to weigh potential evidence, but to assess a pleading's legal sufficiency).

While the *Feres* doctrine is jurisdictional, here, it is intertwined with material factual disputes that the Court cannot currently resolve. *Cf. Pringle*, 208 F.3d at 1223 & n.3 (explaining that both the *Feres* doctrine and discretionary function exception should be decided on summary judgment where jurisdictional questions implicate merits issues); *Gonzalez*, 88 F. App'x at 373-74 (reviewing dismissal under *Feres* to determine whether there were genuine issues of material fact). Accordingly, Defendant's Motion [#12] is **denied without prejudice** as to the *Feres* doctrine. Defendant may raise the issue anew at the appropriate time in a Rule 56 motion.

### C.    Discretionary Function Exception

Defendant also argues that Plaintiff's claims are barred by the "discretionary function exception" to the FTCA, codified at 28 U.S.C. § 2680(a). *Motion* [#12] at 8-15. Plaintiff argues that the exception does not apply to the Air Force agent or employee's decision to implement a safety policy by negligently deploying vehicle barriers. *Response* [#21] at 10-14. Alternately, Plaintiff argues that the applicability of the exception cannot be determined solely on a Rule 12(b) motion to dismiss. *Id.* at 14-15.

### 1.    Applicable Law

The FTCA's waiver of sovereign immunity does not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

When considering whether the discretionary function exception applies, courts apply a two-prong test. *See Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531,

536 (1988). First, the court considers "whether the action is a matter of choice for the acting employee." *Id*. Thus, the exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow." *Id*. If a particular course of action is prescribed, "the employee has no rightful option but to adhere to the directive." *Id*. Second, "assuming that the challenged conduct involves an element of judgment, a court must consider whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. Therefore, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id*. at 537. This holds true even if the alleged conduct was negligent. *Id*. at 537-38; *see also Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (affirming dismissal of negligence claim under the FTCA as barred by the discretionary function exception).

Contrary to Plaintiff's argument, in this Circuit, a plaintiff bears the burden to show that the exception does not apply; the government does not bear the burden to show that it does. *See Response* [#21] at 11 (arguing that the discretionary function exception is an affirmative defense, citing *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005)); *but see Knezovich v. United States*, 82 F.4th 931, 942 (10th Cir. 2023) (noting presumption that a government agency's acts are grounded in policy absent a mandatory statute, regulation, or policy, and articulating the plaintiff's burden); *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008) (stating that the discretionary function exception creates a jurisdictional prerequisite to suit and plaintiffs bear the burden of establishing subject matter jurisdiction) (citation omitted).

Finally, Plaintiff attempts to distinguish between "decisions made at the 'planning level,' as well as operational decisions that involve the exercise of discretion" and "operational or ministerial level decisions that are negligent or do not involve policy considerations." *Response* [#21] at 10. This section of Plaintiff's argument cites only Ninth Circuit cases and one D.C. Circuit case from 1955,[4] but the Tenth Circuit draws no such distinction. *Id.* at 10-14 (citations omitted); *but see Harrell v. United States*, 443 F.3d 1231, 1237 (10th Cir. 2006) (explaining that Supreme Court precedent has "foreclosed the distinction between high-level policy setting and low-level operational decisions") (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991) ("Discretionary conduct is not confined to the policy or planning level.")). Instead, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984).

## 2.    Directive 31-1 and Operating Instruction 31-118[5]

Defendant points to two policies, Directive 31-1 and Operating Instruction 31-118. *See Motion* [#12] at 9-11. Directive 31-1 establishes a framework for Air Force security measures and installations at its facilities. *See Directive 31-1* [#12-2] at 2-3 (preamble). Compliance with the directive is mandatory and "[t]he terms 'must,' 'shall,' and 'will' denote mandatory actions." *Id.* at 1. In its policy section, the directive explains that

---

[4] Plaintiff states that "the 10th Circuit in *Friday v. United States* distinguished decisions made at the operational versus those made at the planning level. 239 F.2d 701 (10th Cir. 1957)." *See Response* [#21] at 13. However, *Friday* was a Ninth Circuit case, not a Tenth Circuit case. *See Friday v. United States*, 239 F.2d 701 (9th Cir. 1957).

[5] As previously discussed, the Court may take judicial notice of these policies and procedures. *See Mancell v. McHugh*, No. 13-417 KG/SMV, 2015 WL 13662785, at *2 (D.N.M. Apr. 3, 2015) (taking judicial notice of an Army regulation).

"[p]rotecting and defending Air Force Installations is a strategy[.]" *Id.* at 3, § 2.1. Installation commanders' roles and responsibilities include "[m]inimiz[ing] mission degradation from threat activity within [Buckley's] boundary and . . . loss of life and injury from threat activity and natural events; and protect[ing] government property and personnel from natural disasters, hostile, and criminal acts." *Id.* at 9, § 3.12.1.

SFS Operating Instruction 31-118 ("Operating Instruction 31-118") is a since-rescinded local implementation of Directive 31-1, applied "to all [460th Security Forces Squadron] personnel performing law enforcement duties on Buckley AFB[.]" *See Operating Instruction 31-118* [#12-1] at 12. Compliance with Operating Instruction 31-118 was mandatory. *Id.* In part, it states that Security Forces personnel "will control access to the installation . . . and ensure only authorized personnel are allowed access[.]" *Id.* at 32, § 4.1. Operating Instruction 31-118 includes a section on pop-up vehicle barrier rules of engagement. *See id.* at 106-08, Attachment 9. These rules of engagement were "not intended to replace sound personal judgment, nor do they provide an all-inclusive list of circumstances requiring a decision to employ the pop-up vehicle barriers." *Id.* at 106, § A9.1.

Operating Instruction 31-118 provided that "[b]arriers at the installation [entry control point] (IECP) will be down at all times during normal operating hours for the IECP, unless being deployed." *Id.* at 107, § A9.3.1.1.1. This section is followed by five protocols for deploying barriers: non-hostile employment, hostile employment, gate closure employment, standard barrier operational testing procedures, and certain "Increased Force Protection Condition (FPCON) Operations". *Id.* at 107-08, §§ A9.3.1.2. – A9.5.5. In part, Operating Instruction 31-118 states:

A.9.3.1.2. Non-Hostile Employment

A.9.3.1.2.1. The barrier will be employed for **any** unauthorized non-hostile entry onto base. The entry controller is responsible for determining if an unauthorized entry is hostile or not. For a non-hostile act, the entry controller will activate the barriers by pressing the button labeled 'up.' This button raises the barrier along with utilizing safety sensors located around the barrier.

A.9.3.1.3. Hostile Employment

A.9.3.1.3.1. The barrier will be employed for any unauthorized **hostile** entry onto base. The entry controller is responsible for determining if an unauthorized entry is hostile or not. An example of a hostile entry onto base would be the use of a weapon when entering, or extremely aggressive actions of the driver to gain unauthorized entry onto base. The entry controller will activate the barrier in an emergency situation by lifting up the switch safety guard and activating the emergency toggle switch. Emergency activation disregards all safety features of the barrier, and can potentially cause severe injury to innocent drivers.

*Id.* at 107, § A9.3.1. (Installation Entry Control Point Procedures).

### 3. Failure to Exercise Reasonable Care/Failure to Protect

Plaintiff alleges that Defendant failed to exercise reasonable care and failed to protect him from a dangerous condition on the property, based on the gate agent's initiation of a "Gate Runner" alert and deployment of security barriers. *Compl.* [#1], ¶¶ 28, 32, 38. The Court must first consider whether the gate agent's conduct was a matter of choice. *Berkovitz*, 486 U.S. at 536. Defendant argues it was: "[N]o federal statute, regulation, or policy specifically prescribes how the Government should operate the security barriers at Buckley" because Operating Instruction 31-118 "leaves the determination of whether an unauthorized entry is hostile or not to '[t]he entry controller.'" *Motion* [#12] at 12-13 (citing *Operating Instruction 31-118* [#12-1] at 107, § A9.3.1.2.1). There are two problems with this argument.

First, Plaintiff claims that his entry onto Buckley on May 13, 2021, was not unauthorized at all—he alleges he was allowed to be there. *See Compl.* [#1], ¶ 13 (alleging that Plaintiff was "lawfully on the subject premises"), ¶ 15 (alleging that Plaintiff was an invitee on the premises); *cf.* COLO. REV. STAT. § 13-21-115(7)(a) and (d) (distinguishing invitees from trespassers, who are on the land of another without the landowner's consent). While Operating Instruction 31-118 gave the gate entry agent discretion to determine whether a particular *unauthorized* entry is hostile or not before deploying barriers, it does not give the agent discretion to deploy barriers following an *authorized* entry. Security Forces personnel are directed to "control access to the installation" and "ensure that only authorized personnel are allowed access." *Operating Instruction 31-118* [#12-1] at 32, § 4.1. Moreover, aside from five specific protocols, Operating Instruction 31-118 mandates that barriers "will be down at all times during normal operating hours" unless being deployed. *Operating Instruction 31-118* [#12-1] at 107, § A9.3.1.1.1. The Court acknowledges the statement that these rules of engagement "are not intended to replace sound personal judgment, nor do they provide an all-inclusive list of circumstances requiring a decision to employ the pop-up vehicle barriers," but this is undermined by mandatory language in the following subsections. *Id.* at 106, § A9.1. Barrier employment is expressly governed by the "procedures listed below" and, under normal FPCON operations, "[b]arriers *will be* operated using routine/emergency procedures." *Id.* at 107, § A9.3; *id.* at 108, § A9.5.1 (emphasis added). At nearly every turn—except for a determination as to whether an unauthorized entry is hostile or not— these mandatory protocols restrict gate agents' discretion. An agent's decision to deploy emergency barriers in response to an authorized entry does not appear to be a matter of

choice under the applicable directive because the directive does not contemplate deploying barriers in that situation. *Cf. Berkovitz*, 486 U.S. at 536.

Second, even if the entry controller believed Plaintiff's entry was unauthorized, as Defendant argues, Operating Instruction 31-118 still gave her no discretion in whether to deploy barriers. *See Motion* [#12] at 13. Admittedly, Operating Instruction 31-118 gives the gate agent responsibility (and, therefore, discretion) to determine whether a particular unauthorized entry is hostile or not. *Operating Instruction 31-118* [#12-1] at 107, §§ A9.3.1.2.1 ("The entry controller is responsible for determining if an unauthorize entry is hostile or not."), A9.3.1.3.1 (same). No matter what she decides, however, she still must deploy the barriers. *See Operating Instruction 31-118* [#12-1] at 107, §§ A9.3.1.2.1 ("The barrier will be employed for **any** unauthorized non-hostile entry onto base.") (emphasis in original), A9.3.1.3.1 ("The barrier will be employed for any unauthorized **hostile** entry onto base.") (emphasis in original). To be sure, emergency barrier deployment in a hostile situation apparently "disregards all safety features" and is therefore potentially more dangerous than barrier deployment in a non-hostile situation. *See Operating Instruction 31-118* [#12-1] at 107, § 9.3.1.3.1. However, Operating Instruction 31-118 makes clear that the entry controller's discretion is limited to determining hostility, and once she makes that determination, her next action—deploying the barriers—is mandatory. Plaintiff is challenging the gate agent's mandatory barrier deployment, not her discretionary hostility determination. *See Compl.* [#1] at ¶ 38 (alleging an "unnecessary deployment of the security barrier"). The "policy specifically prescribe[d] a course of action for an employee to follow" when faced with of an unauthorized entry, and the agent "had no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. Because the gate agent's

conduct was mandatory, "there is no discretion in the conduct for the discretionary function exception to protect." *Id.* Defendant's invocation of the discretionary function exception as to barrier deployment fails at the first prong.

In summary, viewing the allegations in the light most favorable to Plaintiff at the Rule 12(b)(6) stage, the discretionary function exception does not clearly apply to the entry controller's conduct. As with the *Feres* doctrine, the Court recognizes that discovery is needed and that the discretionary function exception may be supported on a more developed record. Therefore, Defendant's Motion [#12] is **denied without prejudice** as to the discretionary function exception and Plaintiff's failure-to-protect and failure to exercise reasonable care theories of premises liability. Defendant may raise the issue anew at the appropriate time in a Rule 56 motion.

### 4.    Failure to Warn

Plaintiff also alleges that Defendant failed to warn about the dangerous condition caused by the vehicle barriers. *See Compl.* [#1], ¶ 29. Defendant argues that Plaintiff's failure-to-warn claim is barred by the discretionary function exception. *See Motion* [#12] at 15 (citing *Ball v. United States*, 967 F.3d 1072, 1080 (10th Cir. 2020)). On this point, the Court agrees with Defendant.

An agency's failure to warn is distinct from its alleged failure to follow policy which results in a dangerous condition. *See, e.g.*, *Johnson v. U.S. Dep't of Interior*, 949 F.2d 332, 337 (10th Cir. 1991) (stating that the plaintiff's "failure to warn claim should be analyzed separately from the alleged failure to adequately regulate mountain climbing"); *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991) (agreeing that the plaintiff's failure to warn claim should be considered separately from an alleged failure to implement

policies). The discretionary function exception bars a failure to warn claim unless the plaintiff can show that the government's inaction was completely disconnected from the policy decisions that created a particular hazard. *Zumwalt*, 928 F.2d at 955; *see also Johnson*, 949 F.2d at 338 ("In the absence of facts indicating the failure to post additional warnings was a distinct, nonpolicy decision, we conclude that [the p]laintiff's failure to warn claim is barred by the discretionary function exception.").

For example, in *Ball v. United States*, the court dismissed the plaintiff's failure to warn claim against the United States Forest Service, concluding that the Service's "need to balance limited financial and human resources, public safety, and scenic preservation in creating and executing its safety and maintenance plan for off-road hazards" rendered its alleged failure to erect security barriers or warning signs "squarely the type of decision that the discretionary-function exception aims to protect from 'judicial second-guessing.'" *Ball*, 967 F.3d at 1082 (quoting *Berkovitz*, 486 U.S. at 536-37).

Here, Plaintiff does not allege that any policy or practice requires the Air Force to warn entrants of security measures on base. Because Plaintiff has not identified any mandatory policy, statute, or regulation, the government has satisfied the first prong of the discretionary function exception as to the alleged failure to warn. *Berkovitz*, 486 U.S. at 536.

As for the second prong, whether the decision involved "the permissible exercise of policy judgment," *id.* at 537, the Directive and Operating Instruction clearly show that the Air Force has a policy of "[p]rotecting and defending Air Force Installations"; "[m]inimiz[ing] mission degradation from threat activity within [Buckley's] boundary"; and "control[ling] access to the installation . . . and ensur[ing] only authorized personnel are

allowed access." *Directive 31-1* [#12-2] at 3, § 2.1 and 9, § 3.12.1; *Operating Instruction 31-118* [#12-1] at 32, § 4.1. As Defendant argues, the Air Force could reasonably make a policy decision that its installations' safety features are more effective without warning signs or announcements, and it would not be the Court's place to review that decision. *See Motion* [#12] at 15. The Air Force's decision not to warn would-be trespassers is therefore directly connected to the same policy decision (i.e., implementation of security features) that created the dangerous condition (i.e. deployable vehicle barriers at Buckley). *Cf. Zumwalt*, 928 F.2d at 955. Because Plaintiff has not shown that Defendant's failure to warn was a distinct, nonpolicy decision, the Motion [#12] is **granted in part** as to the discretionary function exception, and Plaintiff's failure-to-warn theory of premises liability is **dismissed without prejudice**. *See, e.g.*, *Garcia*, 533 F.3d at 1175 (noting that the discretionary function exception is jurisdictional); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (stating, "dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits") (emphasis in original).

### D.    Failure to State a Claim

#### 1.    Premises Liability

Under the Colorado Premises Liability Act, "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers the landowner actually knew about or should have known about." COLO. REV. STAT. § 13-21-115(4)(c)(1). Plaintiff alleges that he was an "invitee" on Buckley's premises. *Compl.* [#1] ¶ 15. In this context, an "invitee" is "a person who enters or remains

on the land of another to transact business in which the parties are mutually interested[.]" COLO. REV. STAT. § 13-21-115(7)(a).

Defendant argues that Plaintiff has failed to state a premises liability claim because he has not alleged sufficient non-conclusory facts. *Motion* [#12] at 18. Specifically, Defendant asserts Plaintiff alleges in a conclusory fashion that there was a "misuse of the gate security system" or that "a security barrier was improperly deployed and struck [Plaintiff's] vehicle." *Id.* (citing *Compl.* [#1], ¶¶ 27, 19). The Court disagrees. Plaintiff's allegations are not detailed but the terms "misuse" and "improper" are not legal conclusions and Plaintiff's theory of premises liability does not require the Court to draw any unwarranted or unreasonable inferences.

Plaintiff alleges that he was lawfully on Buckley property and that his car had been parked in plain sight before the incident, which caused his car to ignite and caused physical and psychological injury to him. *Compl.* [#1], ¶¶ 13, 19, 38. Therefore, at this pleadings stage, the Court can plausibly infer that Defendant's agent(s) failed to exercise reasonable care when they created a dangerous condition (by raising security barriers) on the property even though Plaintiff's entry was authorized. *See id.*; *Iqbal*, 556 U.S. 678. The bar of legal sufficiency is not a high one, and Plaintiff's theory of premises liability is straightforward enough that the Complaint [#1] meets it. *Cf. Twombly*, 550 U.S. at 565 n.10 (noting that, using model forms, a plaintiff could sufficiently plead negligence by alleging simply "that the defendant struck the plaintiff with his car while plaintiff was crossing a particular highway at a specified date and time"). Accordingly, the Motion [#12] is **denied** as to Plaintiff's failure to exercise reasonable care and failure-to-protect theories of premises liability.

2.    **Negligence**

Defendant argues that Plaintiff's claim falls within the Colorado Premises Liability Act's scope and therefore "cannot be brought as a common law negligence claim[.]" *Motion* [#12] at 17. Plaintiff offers no rebuttal, insisting only that his premises liability claims "are sufficient". *Response* [#21] at 15.

Under Colorado law, the Colorado Premises Liability Act provides "an exclusive remedy against a landowner for injuries which occur as a result of conditions, activities, or circumstances on the landowner's property." *Reid v. Berkowitz*, 370 P.3d 644, 647 (Colo. App. 2016); *see also Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004) (explaining that the Act's "classification of the duty owed licensees and invitees" is "complete and exclusive" and "leaves no room for application of common law tort duties"). Plaintiffs often plead negligence in the alternative, but to sufficiently do so, they must allege facts tending to show a duty separate from a landowner's ordinary duties. *Cf. Egbert v. Griswold*, No. 1:22-cv-02943-SKC-MEH, 2024 WL 4201599, at *5 (D. Colo. Sept. 16, 2024) (dismissing several (but not all) theories of negligence as abrogated by the Colorado Premises Liability Act); *Clark v. Hyatt Hotels Corp.*, No. 1:20-cv-01236-RM-SKC, 2021 WL 8129700, at *3 (D. Colo. Dec. 13, 2021) (dismissing negligence claim against landowner for failure to plausibly allege any separate common law duty).

Here, Plaintiff has not alleged that Defendant or its agents owed him any duty other than the duties any Colorado landowner owes invitees on its land. In fact, his negligence claims are even framed in the language of premises liability. *See Compl.* [#1], ¶ 36 (alleging that Defendant "negligently created a dangerous condition on the subject premises"), ¶ 37 (alleging that "Defendant owed a duty of reasonable care to Plaintiff as

an invitee on the premises"). Because Plaintiff has not alleged facts that would establish a separate common law duty, he has not plausibly pleaded negligence in the alternative. Therefore, the Motion [#12] is **granted** as to Plaintiff's negligence claim. Plaintiff's second claim is **dismissed without prejudice**.

**IV. Conclusion**

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#13] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER **ORDERED** that Plaintiff's failure-to-warn theory of premises liability is **DISMISSED WITHOUT PREJUDICE** under the FTCA's discretionary function exception.[6]

IT IS FURTHER **ORDERED** that Plaintiff's negligence claim is **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** the Motion [#13] is **DENIED** in all other respects, without prejudice to Defendant later raising the *Feres* doctrine or the discretionary function exception under Rule 56, as appropriate.

IT IS FURTHER **ORDERED** that the discovery stay in this matter is lifted. An Order Setting Planning/Scheduling Conference will issue in due course.

Dated: March 31, 2025                      BY THE COURT:

Kathryn A. Starnella

---

[6] Plaintiff's failure to protect and failure to exercise reasonable care premises liability claims are not dismissed.

United States Magistrate Judge